## COMMONWEALTH *vs.* CHARLES HARDY.

No. 04-P-390.

Worcester. December 15, 2004. - March 31, 2005.

Present: ARMSTRONG, C.J., BECK, & McHUGH, JJ.

*Constitutional Law,* Search and seizure. *Search and Seizure,* Warrant, Affidavit.

The information in an affidavit supporting applications for warrants to search a criminal defendant's apartment, obtained from a confidential informant and the independent observations of the police, established a sufficient nexus between the defendant's drug-dealing activity and his apartment to justify a search. [211-214]

INDICTMENTS found and returned in the Superior Court Department on October 15, 2002.

A pretrial motion to suppress evidence was heard by *John S. McCann*, J.

An application for leave to prosecute an interlocutory appeal was allowed by *John M. Greaney*, J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.

*Ellyn H. Lazar-Moore*, Assistant District Attorney, for the Commonwealth.

*John L. Daly, Jr.*, for the defendant.

ARMSTRONG, C.J. On May 3, 2002, Leominster police executed search warrants for the defendant Charles Hardy's vehicle and apartment residence. Both warrants authorized a search of the defendant. From the defendant's person, police seized 267 grams of cocaine and $940 in a tape-wrapped package, a cellular telephone, and a police baton. From his vehicle, police recovered a glassine bag containing over two grams of cocaine. From the apartment, police seized an electronic scale with white powder residue, a small amount of marijuana, baggies with

white powder residue, a sifter with white powder residue, a shotgun shell, and various martial arts weapons.

Following his indictment on charges of trafficking in cocaine and possession of a Class D controlled substance (marijuana), the defendant moved to suppress the evidence seized from his vehicle and his apartment pursuant to the search warrants. A Superior Court judge concluded that the affidavit submitted in support of the search warrant applications[1] furnished probable cause to search the vehicle but not the apartment, and he suppressed the evidence seized from the apartment.[2] A single justice of the Supreme Judicial Court granted the Commonwealth's application for leave to prosecute an interlocutory appeal of the suppression order and transferred the case to this court. We reverse the order suppressing the evidence seized from the apartment.

Our inquiry as to the sufficiency of a search warrant application begins and ends with the "four corners of the affidavit." *Commonwealth* v. *O'Day*, 440 Mass. 296, 297 (2003), quoting from *Commonwealth* v. *Villella*, 39 Mass. App. Ct. 426, 428 (1995). Detective Joseph Siciliano, Jr., a member of the Leominster police drug enforcement unit, submitted the affidavit, which contained the following information. A confidential informant told police that a white male named Charles Hardy, called "Chuck," who lived in apartment 3 of the Coolidge building at 740 Central Street, Leominster, was selling cocaine at various locations within Leominster and Clinton. The informant described the defendant's vehicle: a gray Nissan pickup truck, license plate number E18198. The informant also stated that the defendant stored cocaine in his apartment. The informant previously had provided information that led to the 1997 drug trafficking conviction of a named individual.

The Leominster police used the informant to make two

---

[1]The police submitted the same affidavit in support of each of the search warrant applications.

[2]The items recovered from the defendant's person were listed on the return of the search warrant for the apartment and were swept up in the suppression order. The Commonwealth argues that the inadvertent listing of those items does not warrant their suppression. Because we conclude that the affidavit provided probable cause to search the apartment, we do not reach this argument.

controlled purchases from the defendant. During each controlled purchase, police observed the defendant leave the Coolidge building at 740 Central Street, enter the gray Nissan pickup, and drive directly to the informant's location. After the first controlled buy, the defendant returned to the Coolidge building and entered a first-floor apartment the police later confirmed was apartment 3.

Detective Siciliano also conducted independent surveillance of the defendant over a month-long period. During this period, he observed the defendant leave the Coolidge building, drive the gray Nissan pickup to locations in Clinton and Leominster, meet briefly with individuals, exchange items, and leave. Detective Siciliano stated in the affidavit that in his experience, this activity was "common in the illegal distribution of controlled substances."

Detective Siciliano observed the defendant returning to the Coolidge building and entering apartment 3 on other occasions. Employees of the Coolidge building confirmed that the defendant drove a gray Nissan pickup and lived in apartment 3.

To establish probable cause for a search warrant, an affidavit must "contain enough information for the issuing magistrate to determine that the items sought are related to the criminal activity under investigation, and that they may reasonably be expected to be located in the place to be searched." *Commonwealth* v. *O'Day*, 440 Mass. at 300, quoting from *Commonwealth* v. *Cefalo*, 381 Mass. 319, 328 (1980). "[T]he affidavit should be read as a whole, not parsed, severed, and subjected to hypercritical analysis." *Commonwealth* v. *Blake*, 413 Mass. 823, 827 (1992). The information provided by the informant and the independent observations of the Leominster police established a sufficient nexus between the defendant's drug-dealing activity and his residence to justify a search. See, e.g., *Commonwealth* v. *Saleh*, 396 Mass. 406, 411-412 (1985); *Commonwealth* v. *O'Day*, 440 Mass. at 302.

In each of the two controlled buys, the defendant drove directly from his residence to the designated location and conducted a drug transaction. On numerous other occasions, police observed the defendant leave his apartment, drive to locations in Clinton and Leominster, and engage in what ap-

peared to be drug transactions. Because the defendant was under constant surveillance, it was unlikely that he obtained the drugs from a location other than his home. *Commonwealth* v. *O'Day*, 440 Mass. at 303.

A magistrate may draw " 'normal inferences as to where a criminal would be likely to hide' the drugs he sells." *Id.* at 302, quoting from *Commonwealth* v. *Cinelli*, 389 Mass. 197, 213, cert. denied, 464 U.S. 860 (1983). Although the fact that an individual on one occasion drives directly from his residence to a drug transaction does not, by itself, establish probable cause to search his residence, see *Commonwealth* v. *Smith*, 57 Mass. App. Ct. 907, 908 (2003), it may, with additional evidence — police observations, for example — link a defendant's drug-selling activity to his residence. See, e.g., *Commonwealth* v. *Blake*, 413 Mass. at 829; *Commonwealth* v. *O'Day*, 440 Mass. at 303. The defendant's pattern of driving directly from his home to drug transactions distinguishes this case from the *Smith* case, where we held that a single observation of a defendant driving from his residence to a drug transaction did not supply probable cause to search the home. *Commonwealth* v. *Smith*, 57 Mass. App. Ct. at 908.

The magistrate could infer from the fact that the defendant engaged in multiple transactions during a single trip that he was carrying a large amount of drugs. See *Commonwealth* v. *O'Day*, 440 Mass. at 303. Here, as in *O'Day*, it was unlikely that the defendant would store large quantities of drugs in his truck while he was at home; and although the defendant was never observed carrying anything from his truck into his house, valuable quantities of cocaine are easily concealed on one's person. *Ibid.* The fact that police never observed short-term visitors or other evidence of drug transactions at the defendant's residence, as in *Commonwealth* v. *O'Day*, *supra* at 302, is not fatal to probable cause, because the defendant's usual method of operation was to deliver drugs away from his apartment. See *Commonwealth* v. *Alcantara*, 53 Mass. App. Ct. 591, 594 (2002).

It was true, as the judge observed, that the confidential informant — so far as the affidavit related — did not state that he had visited apartment 3 and seen drugs there, and thus did not disclose his basis for stating that the defendant kept drugs in

his apartment. But the police surveillance of the defendant's movements, sufficiently confirming that his apartment was the base for his operations, brought the case within the principle that a tip, "even though not [by itself] qualifying under *Aguilar* [v. *Texas*, 378 U.S. 108 (1964)], may be used to give such additional color as is needed to elevate the information acquired by police observation above the floor required for probable cause." *Commonwealth* v. *Saleh*, 396 Mass. at 411, quoting from *United States* v. *Canieso*, 470 F.2d 1224, 1231 (2d Cir. 1972). Because of the police observations, this is not a case where "there was no specific information in the affidavit which tied the defendant's residence to illegal drug transactions, other than that he lived at those premises." *Commonwealth* v. *Chongarlides*, 52 Mass. App. Ct. 366, 370 (2001), quoting from *Commonwealth* v. *Olivares*, 30 Mass. App. Ct. 596, 600 (1991). Rather, this case is controlled by *Commonwealth* v. *O'Day*, *supra.*

The order allowing the motion to suppress evidence found in the search of the apartment is reversed, and a new order shall enter denying the motion.

*So ordered.*