COMMONWEALTH vs. STEPHANIE GALLAGHER
(and thirteen companion cases[1]).

No. 06-P-529.

Plymouth. November 9, 2006. - January 12, 2007.

Present: KANTROWITZ, BROWN, & GREEN, JJ.

*Search and Seizure,* Warrant, Affidavit, Probable cause. *Constitutional Law,* Search and seizure, Probable cause. *Probable Cause. Controlled Substances.*

A District Court judge erred in granting two criminal codefendants' pretrial motions to suppress evidence found in their apartment, where the information recited in the affidavit in support of the search warrant application provided a reasonable basis to conclude that the defendants were engaged in a cocaine delivery service that involved completing drug transactions away from and outside their residence, and that the drugs were kept in their apartment. [59-61]

COMPLAINTS received and sworn to in the Brockton Division of the District Court Department on February 2, 2004.

Pretrial motions to suppress evidence were heard by *David G. Nagle, Jr., J.*

An application for leave to prosecute an interlocutory appeal was allowed by *Robert J. Cordy*, J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.

*Laura F. Weierman,* Assistant District Attorney, for the Commonwealth.

*Joseph F. Krowski, Jr.,* for Stephanie Gallagher.

*Kirsten A. Zwicker Young* for Korey Lee.

KANTROWITZ, J. The motion judge allowed the defendants' motions to suppress evidence found in their apartment, concluding that the affidavit in support of the search warrant application

[1]Eight against Stephanie Gallagher and five against Korey Lee.

failed to establish the requisite nexus between the objects sought and the defendants' apartment. The Commonwealth appeals. We reverse.

*Facts.* The facts come from Brockton police Detective Thomas E. Keating's affidavit. See *Commonwealth* v. *O'Day*, 440 Mass. 296, 297 (2003), quoting from *Commonwealth* v. *Villella*, 39 Mass. App. Ct. 426, 428 (1995) ("[O]ur inquiry as to the sufficiency of the search warrant application always begins and ends with the 'four corners of the affidavit' ").

On January 21, 2004, Keating, who had spent the previous eleven years of his sixteen-year career in narcotics and gang units, received information about a "crack" cocaine delivery service operating in Brockton. He learned that by telephoning a specific number and asking for Stephanie, a female would respond and ask the caller what he wanted as well as where and when to meet. Thereafter, either Stephanie or her boyfriend "Korey," or both, would deliver the crack cocaine to the buyer in a blue Dodge Durango sport utility vehicle with license plate number 22NX13.

Armed with this information, Keating, that same day, telephoned the number and asked for Stephanie. A female asked what he wanted, to which he responded, "[T]wo twenties." The female then identified herself as Stephanie and told him to go to the McDonald's restaurant on Crescent Street, from which "she [was] only a couple minutes away," at which point he should call her again.

Keating followed the instructions, telephoning Stephanie after he arrived at the designated area, located within 1,000 feet of the Downey Elementary School. He told her that he was in the parking lot, to which she replied that "she would be there in two minutes." True to her word, an individual, later identified as defendant Stephanie Gallagher, arrived within minutes, in the blue Dodge Durango with license plate number 22NX13, and the drug deal was consummated. Surveillance units followed Gallagher back to 506 Crescent Street, where they observed her park her car in the side driveway and walk in the side entrance of the apartment building at that address.

A few days later, on January 25, 2004, two minutes after Keating telephoned to set up a second controlled drug buy with

Gallagher, surveillance units observed her exit the side door of the apartment building at 506 Crescent Street, enter the blue Dodge Durango, and drive to the McDonald's parking lot where Keating again purchased crack cocaine from her. Additional surveillance units then followed Gallagher back to 506 Crescent Street where they observed her park the Durango, walk in the side entrance, and enter a first-floor apartment.

On January 27, 2004, two police officers confirmed that Gallagher and defendant Korey Lee resided in the first-floor rear apartment at 506 Crescent Street.[2] The following day, within five minutes of Keating setting up a third controlled drug buy with Gallagher, surveillance units observed both defendants leave their apartment at 506 Crescent Street and proceed directly in the blue Dodge Durango to the McDonald's parking lot where they sold Keating more crack cocaine.

Armed with this information, Keating, on January 29, 2004, applied for, and received, a warrant to search the defendants' first-floor rear apartment at 506 Crescent Street. On January 31, prior to the warrant being executed, a fourth controlled buy was arranged, during which Gallagher was arrested ($1,737 being seized from her). The search of the apartment occurred shortly thereafter, resulting in the arrest of Lee and the seizure of a cellular telephone (with the same number that Keating had telephoned), a sandwich bag containing thirteen individual pieces of crack cocaine, a box of Glad sandwich bags, and paperwork identifying both Gallagher and Lee as residents of the apartment. The defendants were charged with numerous drug offenses.[3]

In response to the defendants' motions to suppress, the mo-

---

[2]Two police officers visited the apartment building at 506 Crescent Street and spoke with Gallagher, who informed them that she lived in the first-floor rear apartment with her boyfriend Korey Lee and that she was renting the blue Dodge Durango that was parked in the driveway. She also gave the police her telephone number (the same number that Keating had telephoned) in case they needed to contact her. Records of the Registry of Motor Vehicles, the Brockton police department, and the Enterprise Rent-A-Car Company confirmed her statements. The circumstances of the ruse initially used to approach the apartment and speak with Gallagher are unclear.

[3]Gallagher was charged with four counts of distribution of a class B substance in violation of G. L. c. 94C, § 32A(*a*); one count of possession with intent to distribute a class B substance in violation of G. L. c. 94C,

tion judge ruled that the affidavit in support of the search warrant application failed to establish the nexus between the objects sought and the location to be searched because "[n]o other specific information was given [in the affidavit] that connected 506 Crescent Street to the alleged drug dealing activities."

*Discussion.* "The information in the affidavit must be adequate to establish a timely nexus between the defendant and the location to be searched and to permit the determination that the particular items of criminal activity sought reasonably could be expected to be found there." *Commonwealth* v. *Eller*, 66 Mass. App. Ct. 564, 565 (2006). "The connection between the items to be seized and the place to be searched does not have to be based on direct observations; it may be found by looking at the type of crime, nature of the items, the suspect's opportunity to conceal items, and inferences as to where the items are likely to be hidden." *Commonwealth* v. *Olivares*, 30 Mass. App. Ct. 596, 600 (1991).

The information recited in Keating's affidavit established probable cause for the warrant to search the defendants' apartment located at 506 Crescent Street. During the second and third controlled drug buys on January 25 and 28, 2004, the police observed Gallagher leave her apartment only minutes after Keating arrived at the McDonald's parking lot and telephoned her.[4] She drove directly to the prearranged location, did not make any stops along the way, and sold crack cocaine

§ 32A(*c*); three counts of a drug violation within 1,000 feet of a school in violation of G. L. c. 94C, § 32J; and one count of conspiracy to violate drug laws in violation of G. L. c. 94C, § 40. Lee was charged with one count of distribution of a class B substance; one count of possession with intent to distribute a class B substance; two counts of a drug violation within 1,000 feet of a school; and one count of conspiracy to violate drug laws.

[4]While the police did not see from where Gallagher departed for the first controlled buy on January 21, it is a fair inference, especially when taken in conjunction with subsequent surveillance, that she came from her home, mere minutes away from the buy location. See *Commonwealth* v. *Vynorius*, 369 Mass. 17, 19 n.4, 23-24 (1975) (where the defendant, in a playground located ten minutes away from his apartment, agreed to sell the informant marijuana, and thereafter walked from the playground in the direction of his apartment and returned approximately twenty minutes later to complete the sale, it was reasonable to conclude that the defendant stored the marijuana in his apartment). See also *Commonwealth* v. *Taglieri*, 378 Mass. 196, 198, cert. denied, 444 U.S. 937 (1979) (magistrate may draw reasonable inferences from

to Keating. Surveillance units also observed Gallagher return to her apartment after she completed the first and second drug deals.

Gallagher's routine of leaving from and returning to her apartment demonstrated a pattern of drug dealing consistent with the crack cocaine delivery service Keating outlined in his affidavit. Furthermore, it was reasonable to infer that the delivery service was based out of her apartment, in which the drugs were kept prior to delivery. See *Commonwealth* v. *Hardy*, 63 Mass. App. Ct. 210, 212-213 (2005) (where the affidavit stated that the defendant drove directly from his apartment to designated locations to sell drugs on two controlled drug buys and that officers observed the defendant leave the apartment, drive to locations, and engage in apparent drug transactions on numerous other occasions, the affidavit established a nexus between the defendant's drug dealing activity and his apartment); *Commonwealth* v. *Santiago*, 66 Mass. App. Ct. 515, 522 n.15 (2006) (where the affidavit stated that on one occasion the defendant's partner went to a house, came out shortly thereafter, and went directly to the informant to sell him drugs, and that on another occasion the defendant himself exited the front door of the same house and went directly to the informant to sell him drugs, the affidavit established probable cause that evidence of the defendant's narcotics operation could be found in the house); *Commonwealth* v. *Eller*, 66 Mass. App. Ct. at 570-571 (where the affidavit established the defendant's use of a prior residence as a base for the drug dealing operation and the defendant subsequently moved to a motel room from which he left to sell drugs and returned shortly thereafter, there was a reasonable basis to conclude that evidence of the defendant's drug dealing would be located in the motel room). See also *Commonwealth* v. *Donahue*, 430 Mass. 710, 712 (2000) ("The affidavit need not convince the magistrate beyond a reasonable doubt, but must provide a substantial basis for concluding that evidence connected to the crime will be found on the specified premises").

The present case is distinguishable from *Commonwealth* v. *Smith*, 57 Mass. App. Ct. 907, 908 (2003), where we held that a single police observation of the defendant leaving his home to

the facts outlined in the affidavit).

conduct a drug transaction, without any other evidence linking the illegal drug activities to the defendant's property, failed to establish probable cause for a warrant to search his home. Here there was adequate information to establish that the defendants were engaged in a crack cocaine delivery service that involved completing drug transactions away from and outside of their residence, and that the drugs were kept in their apartment. See *Commonwealth* v. *Alcantara*, 53 Mass. App. Ct. 591, 594 (2002) (even where the police failed to observe the buyer enter the defendant's apartment, because the defendant usually delivered drugs away from his apartment, "it was reasonable to infer for purposes of probable cause that [the defendant] probably kept the drugs he sold in his apartment"). See also *Commonwealth* v. *Hardy*, 63 Mass. App. Ct. at 213.

> *Order allowing defendants' motions to suppress evidence reversed.*