COMMONWEALTH *vs.* SAMMY YOUNG.

No. 09-P-2014.

Bristol. June 2, 2010. - August 13, 2010.

Present: KANTROWITZ, KATZMANN, & HANLON, JJ.

*Constitutional Law,* Search and seizure, Probable cause. *Search and Seizure,* Affidavit, Probable cause. *Probable Cause. Controlled Substances.*

A Superior Court judge erred in granting a criminal defendant's pretrial motion to suppress cocaine, cash, and other drug-related evidence seized by police officers from the defendant's apartment pursuant to a search warrant, where the affidavit in support of the search warrant, which described police observation of the defendant's routine of walking directly from his apartment to the point of a drug sale and returning to his apartment immediately following the sale, furnished a sufficient nexus between the defendant's drug sales and his apartment to justify a search of his residence. [385-388]

INDICTMENT found and returned in the Superior Court Department on November 16, 2007.

A pretrial motion to suppress evidence was heard by *John P. Connor, Jr.,* J.

An application for leave to prosecute an interlocutory appeal was allowed in the Supreme Judicial Court for the county of Suffolk by *Ralph D. Gants,* J., and the appeal was reported by him to the Appeals Court.

*Shoshana E. Stern,* Assistant District Attorney, for the Commonwealth.

*Adriana Contartese* for the defendant.

KANTROWITZ, J. In this search and seizure drug case, we are faced with the knotty issue of nexus. Here, a confidential informant (CI) repeatedly[1] purchased drugs (once by way of a

---

[1] According to the police affidavit, the CI provided "information regarding the sale of crack cocaine at 177 Tripp Street, second floor," including that the

controlled purchase) from the defendant, Sammy Young, always within *walking* distance of the defendant's apartment. It is difficult to discern, on this record, where else other than his apartment the drugs that the drug dealer peddled could have been stored. As such, we reverse the allowance of his motion to suppress.

*Background.* The Commonwealth appeals from the decision of a Superior Court judge allowing the defendant's motion to suppress cocaine, cash, and other drug-related evidence seized by police officers during a search of the defendant's apartment. Charged with possession of cocaine with intent to distribute and a drug offense within a school zone, the defendant moved to suppress the evidence seized from his apartment pursuant to a search warrant.

Following the hearing, the judge allowed the motion, concluding that "[w]ithout a sufficient nexus between the defendant's drug-selling activity and the defendant's residence, the affidavit in support of the warrant to search this location was not supported by probable cause." A single justice of the Supreme Judicial Court allowed the Commonwealth's application for leave to proceed with an interlocutory appeal, and the case was transferred to this court.

On appeal, the Commonwealth argues that (1) the information in the affidavit was sufficient to permit a reasonable inference that the defendant kept a supply of drugs in his apartment, and (2) the search was proper because the apartment could reasonably have been expected to contain the marked currency used in the drug transaction. As the affidavit established a sufficient nexus between the defendant's drug-selling activity and his residence to justify a search of the apartment, we reverse.

*Facts.* "[O]ur inquiry as to the sufficiency of the search warrant application always begins and ends with the 'four corners of the affidavit.' " *Commonwealth* v. *O'Day,* 440 Mass. 296, 297 (2003), quoting from *Commonwealth* v. *Villella,* 39 Mass. App. Ct. 426, 428 (1995). The affidavit presents the following facts.

---

CI "has been buying amounts of crack cocaine from [the defendant]" by ordering drugs by way of cellular telephone and meeting the defendant "at a certain location within walking distance in the area of 177 Tripp Street" to conduct the transaction.

During the last week of July, 2007, the affiant, Detective Bryan Nadeau,[2] spoke with the CI[3] who provided information regarding the sale of "crack" cocaine by a resident of 177 Tripp Street, second floor, in Fall River. Nadeau was told that the CI had been buying crack cocaine from a man known as "Sam." The CI described Sam as a heavy set black male in his late thirties, approximately six feet tall, weighing approximately 275 pounds, with short black hair and a scruffy beard. The information provided by the CI was subsequently verified by police.

According to the CI, Sam lived with his girlfriend at 177 Tripp Street, on the second floor of a multi-apartment dwelling with stairs and a small porch leading to the front door that faced Charles Street. Detective Nadeau discovered from utility records and from the Fall River police department's in-house record system that the second-floor apartment at 177 Tripp Street was registered to Candy Young, the daughter of Sammy Young, the defendant.[4] Detective Nadeau conducted a surveillance of 177 Tripp Street and observed a male matching the description of the defendant leaving the building. Detective Nadeau also showed a picture of the defendant to the CI, who confirmed that he was the same "Sam" from whom the CI had been buying the drugs.

The CI explained that he or she obtained crack cocaine by calling the defendant's cellular telephone number and ordering a specific amount of the drug. The defendant would then instruct the CI to meet him at a certain location within walking distance of 177 Tripp Street, where they would complete the drug sale.[5]

[2]Detective Nadeau, of the Fall River police department's vice unit, has been with the police force for approximately seven years. He has received specialized training in drug identification and has participated in numerous drug investigations, undercover surveillance operations, controlled drug purchases, and the execution of more than sixty search warrants.

[3]The CI previously provided information to the Fall River police department leading to seizure of crack cocaine and marijuana, and to ten arrests, nine of which resulted in convictions, and the tenth of which was then pending in court. The CI's veracity and reliability are not being challenged here.

[4]Detective Nadeau's investigation also revealed that the defendant had in the past been charged with "Possession to Distribute a Class B Substance (cocaine)" in the Fall River Division of the District Court Department in July, 2003, and with distributing a class B substance in the South Boston Division of the Boston Municipal Court Department in September, 2001.

[5]It is unclear from the record whether the designated locale was always the same place, or whether the locale varied from one transaction to the next. In

Detective Nadeau then arranged for the CI to transact a controlled drug purchase with the defendant. Before the purchase, the CI was searched, revealing neither drugs nor contraband on the CI's person. Detective Nadeau gave the CI "a recorded amount of U.S. currency"[6] and drove him to the area of 177 Tripp Street, where Detective James Elumba had parked his unmarked vehicle so as to have a view of the front door. The CI called the defendant's cellular telephone number and ordered an amount of crack cocaine. As before, the defendant instructed the CI to meet him at a certain location within walking distance of 177 Tripp Street.

Detective Nadeau kept the CI under surveillance at the prearranged location, while Detective Elumba watched the defendant leave the front door of 177 Tripp Street and walk toward the location where the CI was waiting. Moments later, the defendant met the CI at the designated location. Detective Nadeau observed the CI hand the defendant an amount of currency, and the defendant hand the CI an indiscernible item. When the defendant and the CI parted in opposite directions, Detective Elumba kept the defendant in sight, and watched him reenter 177 Tripp Street. The CI then gave Detective Nadeau "a yellowish, rock-like substance" in a "knotted plastic bag," packaging Nadeau recognized to be consistent with that of crack cocaine. Again, the CI was searched and found to have no additional drugs or contraband. The CI related that the CI gave the defendant the currency in exchange for crack cocaine.

Based on this information, approximately seventy-two hours later, on August 1, 2007, Detective Nadeau submitted an affidavit alleging that there was probable cause to believe that crack cocaine, drug paraphernalia or instrumentalities, and monies and records derived from illegal drug sales were concealed at 177 Tripp Street, second floor. The search warrant issued on the same date, and was executed subsequently.[7]

---

the affidavit, Detective Nadeau described the locale as "a certain location, within walking distance in the area of 177 Tripp Street."

[6] It is unclear whether this phrase means that the currency was marked or whether the police recorded only the amount of currency given to the CI. It appears that the Superior Court judge understood the phrase to mean that the currency was marked.

[7] The date on which the search was executed is not indicated in the record before the court.

*Sufficiency of the affidavit.* To establish probable cause, an affidavit must contain "specific allegations, or particularized information based on police surveillance or otherwise, that would permit a reasonable inference that the defendant likely kept a supply of drugs in his apartment." *Commonwealth* v. *Pina*, 453 Mass. 438, 442 (2009). "The basic question for the magistrate, when evaluating an affidavit supporting an application for the issuance of a search warrant, is whether there is a substantial basis on which to conclude that the articles or activity described are probably present or occurring at the place to be searched." *Commonwealth* v. *Spano*, 414 Mass. 178, 184 (1993), citing *Commonwealth* v. *Upton*, 394 Mass. 363, 370 (1985).

"The information in the affidavit must be adequate to establish a timely nexus between the defendant and the location to be searched and to permit the determination that the particular items of criminal activity sought reasonably could be expected to be found there." *Commonwealth* v. *Gallagher*, 68 Mass. App. Ct. 56, 59 (2007), quoting from *Commonwealth* v. *Eller*, 66 Mass. App. Ct. 564, 565 (2006). See *Commonwealth* v. *Blake*, 413 Mass. 823, 829 (1992) (affidavit contained facts sufficient "to permit the issuing magistrate to determine whether the drugs could reasonably be expected to be located in the defendant's apartment").

"All reasonable inferences which may be drawn from the information in the affidavit may also be considered as to whether probable cause has been established." *Commonwealth* v. *Donahue*, 430 Mass. 710, 712 (2000). See *Commonwealth* v. *Hardy*, 63 Mass. App. Ct. 210, 213 (2005) (magistrate could infer from informant's statements and police surveillance that defendant kept drugs in his apartment); *Commonwealth* v. *Luthy*, 69 Mass. App. Ct. 102, 107 (2007) (reasonable to infer from visual surveillance of defendant leaving his residence after coordinating sale by way of cellular telephone that on at least one occasion defendant distributed illegal drugs from his address). See also Grasso & McEvoy, Suppression Matters Under Massachusetts Law § 8-1, at 8-3 (2010 ed.) ("The determination of nexus may be the result of inferences from facts set forth in the affidavit").

"[T]he nexus between the items to be seized, and the place

to be searched need not be based on direct observation . . . [but] may be found in 'the type of crime, the nature of the . . . items, the extent of the suspect's opportunity for concealment, and normal inferences as to where a criminal would be likely to hide [evidence of the crime].' " *Commonwealth* v. *Cinelli,* 389 Mass. 197, 213, cert. denied, 464 U.S. 860 (1983), quoting from *United States* v. *Lucarz,* 430 F.2d 1051, 1055 (9th Cir. 1970). "An inference drawn from circumstantial evidence 'need only be reasonable and possible; it need not be necessary or inescapable.' " *Commonwealth* v. *Gilbert,* 423 Mass. 863, 868 (1996), quoting from *Commonwealth* v. *Beckett,* 373 Mass. 329, 341 (1977). However, " '[i]nformation establishing that a person is guilty of a crime does not necessarily constitute probable cause to search the person's residence' [or] . . . probable cause to expect that drugs will be present in a home . . . by the fact that the defendant lives there." *Commonwealth* v. *Pina,* 453 Mass. at 441, quoting from *Commonwealth* v. *Cinelli, supra.*

"We give considerable deference to the magistrate's determination, . . . and even 'the resolution of doubtful or marginal cases . . . should be largely determined by the preference to be accorded to warrants.' " *Commonwealth* v. *Harmon,* 63 Mass. App. Ct. 456, 460 (2005), quoting from *Commonwealth* v. *Germain,* 396 Mass. 413, 418 (1985). "Furthermore, the affidavit should be read as a whole, not parsed, severed, and subjected to hypercritical analysis." *Commonwealth* v. *O'Day,* 440 Mass. at 301, quoting from *Commonwealth* v. *Blake,* 413 Mass. at 827. "[T]o pass muster, an application need not establish to a certainty that the items to be seized will be found in the specified location, nor exclude any and all possibility that the items might be found elsewhere. The test is *probable* cause, not certainty." *Commonwealth* v. *Harmon,* 63 Mass. App. Ct. at 461.

Here, the affidavit furnished a sufficient nexus between the defendant's drug sales and his apartment to justify a warrant to search his residence at 177 Tripp Street. When the defendant arranged drug transactions with the CI, he specified a location in close walking proximity of his address. During the controlled purchase, police observed the defendant leave the front entrance of his building after receiving a telephone call from the CI, and noted his arrival moments later at the designated location. He

walked from his apartment at 177 Tripp Street directly to the designated location, sold the CI crack cocaine, and then walked immediately back to his apartment.

The defendant's routine of walking directly from his apartment to the point of sale, and returning to his apartment immediately following the sale, raised a reasonable inference that he kept a cache of drugs in his apartment at 177 Tripp Street, which served as a base of operations for drug sales that he conducted within walking distance of his residence. The affidavit also established probable cause to believe that the defendant's apartment contained monies[8] derived from drug sales. Prior to the controlled purchase, police supplied the CI with "a recorded amount of U.S. currency," which the CI then delivered to the defendant in exchange for crack cocaine. See *Commonwealth* v. *Turner*, 71 Mass. App. Ct. 665, 669-670 (2008) (where informant was given money with recorded serial numbers and defendants directly returned to residence after selling drugs within seventy-two hours of affidavit, magistrate had substantial basis for concluding monies from illegal sales were probably in residence or on persons of defendants). After the drug sale concluded, police continued to keep the defendant under surveillance until he reentered 177 Tripp Street. See *Commonwealth* v. *Luthy*, 69 Mass. App. Ct. at 108 (reasonable for magistrate to infer that defendant, who remained under surveillance between drug sale and return home, "likely brought the fruits of his transaction into the house").

The facts of the instant case are similar to but ultimately distinguishable from *Commonwealth* v. *Pina*, 453 Mass. at 442, wherein the Supreme Judicial Court held that a single police observation of the defendant driving from his apartment to a location where he sold an unspecified amount of cocaine to an informant, without any particularized information linking the defendant's criminal activity to his residence, failed to establish

---

[8]While the affidavit is silent as to records, the search warrant itself included "all . . . records, printed or electronic, derived from illegal sales thereof, and any personal papers or items to show standing." See *Commonwealth* v. *Rodriguez*, 75 Mass. App. Ct. 290, 300 (2009) ("Here, the magistrate could infer that [the defendant] kept business records [including cellular telephone bills chronicling the transactions] and that the most likely storage place for them was his residence").

probable cause for a warrant to search the defendant's apartment. Here, the affidavit provided a substantial basis to permit a reasonable inference that the defendant conducted sales outside his residence from a cache of drugs kept in his apartment.[9] Unlike *Pina*, the defendant did not make use of a vehicle, where he could have stored the drugs. Instead, the defendant always selected a locale within walking distance of 177 Tripp Street to conduct drug sales. During the controlled purchase, police observed him walking from his apartment directly to the location where he sold crack cocaine.

Additionally, during the controlled drug transaction, the defendant received a recorded amount of currency from a police informant, and after the transaction, he immediately walked back to his apartment carrying the recorded proceeds from the drug sale. These facts, as set forth in the affidavit, were sufficient to permit an issuing magistrate to determine that drugs and monies derived from the sale of drugs could reasonably be expected to be located in the defendant's apartment. See *Commonwealth* v. *Alcantara*, 53 Mass. App. Ct. 591, 594 (2002) (where police observed controlled purchase, "it was reasonable to infer for purposes of probable cause that [the defendant] probably kept the drugs he sold in his apartment," because his usual method of operation was to deliver drugs at location remote from his apartment); *Commonwealth* v. *Hardy*, 63 Mass. App. Ct. at 213 (reasonable to infer that defendant stored drugs in his home when he was under constant police surveillance, making it unlikely that he obtained drugs from another location).

*Conclusion.* On the facts asserted, the police had a substantial basis on which to conclude that drugs, money from the controlled purchase, and records were kept at the defendant's apartment.

> *Order allowing motion to suppress reversed.*

---

[9]While the affidavit does not indicate that the defendant sold drugs from his apartment, or that the informant entered 177 Tripp Street, such lacunae are not important in this case, as the defendant's pattern of selling drugs outside his residence permits the inference that he kept a supply of the drugs he sold in his apartment. See *Commonwealth* v. *Alcantara*, 53 Mass. App. Ct. 591, 594 (2002).