Kern, Leila R., J.
INTRODUCTION
The defendant, Darnell Legette, has filed a motion to suppress the evidence that the police seized from his home and his vehicle on July 9, 2010. Based upon all the credible evidence and the reasonable inferences drawn therefrom, this court determines that Legette’s Motion to Suppress is DENIED.
BACKGROUND
The affidavit attached to the warrant details the following. Arthur Hardy is a Methuen Police Officer with eleven years of experience in law enforcement. Hardy is assigned to the Drug Enforcement Administration out of the Boston Division. He has received specialized training in Basic Narcotics Investigations and attended a training course on street-level narcotic investigations conducted by the Municipal Police Training Committee. He also has had training in the manufacturing, distributing, and packing of illegal narcotics. Over the course of his career, Hardy has assisted in making over 300 narcotics-related arrests.
In April 2010, Hardy met with a Methuen Police Department confidential source (“C.S.”). The C.S. reported to Hardy that Darnell Legette, the defendant, of 634 Haverhill Street in Lawrence, was selling Oxy-contin pills. The C.S. has purchased Oxycontin from Legette over the last several years.
On May 7, 2010, the C.S. telephoned Legette’s cell phone and asked to purchase some pills, meaning Oxycontin pills. Legette told the C.S. to call him back within a few hours to arrange for a meet location. State Trooper Richie Ridlon was conducting surveillance of the area of Legette’s residence and identified him operating a red Acura TL, with the Massachusetts registration number 14LC91. Ridlon followed Legette back to his residence at 634 Haverhill Street and observed him back the Acura into a garage. Around 11:20 a.m., Ridlon observed the same garage door open and Legette pulling out in the Acura. The C.S. than contacted Legette, who told the C.S. to meet in the BJ’s parking lot in Salem, New Hampshire. Hardy and Sergeant Chris Max met with the C.S. at the predetermined location, where they searched the C.S. and the C.S.’s vehicle for illegal contraband, monies, or weapons. The officers did not find anything. Max then handed the C.S. $1,100.
The police department set up surveillance of the BJ’s parking lot. Officers followed Legette drive directly from his residence to the predetermined location in Salem, New Hampshire. Legette walked over to where the C.S. was parked and engaged in conversation at the open driver’s window. After a short conversation, Legette leaned into the window and then stepped back. Legette then walked away from the C.S.’s vehicle and returned to his own vehicle for a moment before entering the BJ’s store.
After the transaction, the C.S. then met with Hardy and Max at a predetermined meet location, where the C.S. handed Hardy a small plastic pouch consisting of pills. Hardy opened the pouch and confirmed that twenty-five Oxycontin pills were inside. All evidence was sent to the Drug Enforcement Administration’s lab to be weighed, tested, and certified.
On June 9, 2010, at approximately 11:19 a.m., the C.S. sent Legette a text message and asked to purchase some pills. Legette responded with a meet spot at the Irving Gas Station located on Pelham Street, in Methuen at 2 p.m. At approximately 1 p.m., officers set up surveillance in the area of Legette’s residence. At approximately 1:08 p.m., officers observed Legette leave the residence in the red Acura.
Officers observed a Toyota Tacoma following Leg-ette. The vehicles pulled to the side of the road and Legette met with the operator of the Tacoma. Legette engaged in a five-to ten-second conversation with the operator of the Tacoma.
At approximately 1:35 p.m., Hardy and Officer Dzioba met with the C.S. at an undisclosed location. At this location, Dzioba gave the C.S. $3,440. The C.S. was searched for contraband and nothing was found.
Officers observed Legette park his car at 634 Ha-verhill Street, enter the residence for a few minutes, and then return to his vehicle. Legette then drove to the parking lot of the Irving Gas Station where he parked his vehicle. Officers observed the C.S. hand the defendant the $3,400. Legette then handed the C.S. a small clear plastic sandwich baggie with numerous pills. The C.S. then met with Dzioba and Hardy at a predetermined location. The C.S. turned over the clear plastic bag containing numerous pills. The C.S. told the officers that Legette had stated he just received a shipment of 1,000 80-mg Oxycontin pills from his supplier.
On July 1, 2010, at approximately 8:51 a.m., the C.S. contacted Legette via text message and asked to *586 purchase some pills. The C.S. also called Legette’s cell phone. The defendant answered the call and set up a meet spot at the Irving Gas Station on Pelham Street in Methuen at approximately 11:30 a.m. Around 9:00 a.m., officers set up surveillance in the area of Legette’s residence. Officers observed Legette leave in the red Acura around 11:12 a.m. Officers observed Legette park on the side of a roadway and pick up an unknown male. The officers lost sight of the Legette’s vehicle soon after.
Hardy and Detective Connor of the Methuen Police Department met with the C.S., and searched the C.S. and the C.S.’s vehicle for illegal contraband. The officers did not find any illegal contraband. Connor handed the C.S. $4,300.
Officers later observed the Acura parked in front of the garage doors at Legette’s residence and observed him enter the house via a side door. After a minute or so, Trooper Smith observed the Legette enter the Acura and drive to the parking lot of the Irving Gas Station to the area where the C.S. was located. The C.S. exited his vehicle and walked over to the defendant’s vehicle. The two had a conversation and after a few minutes, the C.S. walked away from Legette’s vehicle.
Following the transaction, the C.S. met with Connor and Hardy at a predetermined location, where he turned over the clear plastic sandwich baggie containing numerous Oxycontin pills. The C.S. told the police that Legette said he was sitting on 500 80-mg Oxy-contin pills for the remainder of the weekend. Legette also stated he was ordering a large amount of pills from his source in the upcoming week.
Based on the facts and circumstances stated above, a magistrate issued a warrant for Legette’s arrest. Hardy notified other police personnel that a warrant had been issued for Legette’s arrest. On July 9, 2010, Detective Richard Pilz, while driving a marked vehicle, identified Legette driving his red vehicle and pulled him over. After obtaining his identification, Pilz arrested Legette and placed him in the marked cruiser. Other officers, including Hardy, arrived at the scene and. instructed Pilz to bring Legette to the Methuen Police Department. At this time, Hardy directed Legette’s car to be towed, as it was obstructing traffic. The vehicle was searched, towed and secured at the Methuen Police Department.
A magistrate also issued a search warrant for 634 Haverhill Street in Lawrence and for the Acura with the registration number 14LC91. Legette moves to suppress the evidence found at the residence and in the vehicle, alleging there was no probable cause to search either of these places.
RULINGS OF LAW A. Search of Legette’s Residence
The standard for issuing a search warrant is probable cause. Commonwealth v. Byfield, 413 Mass. 426, 428 (1992). To establish probable cause to search, the facts contained in an affidavit “must contain enough information for the issuing magistrate to determine that the items sought are related to the criminal activity under investigation, and that they reasonably may be expected to be located in the place to be searched at the time the search warrant issues.” Commonwealth v. Cinelli, 389 Mass. 197, 213 (1983). A court reviewing the sufficiency of a search warrant application “always begins and ends with the ‘four corners of the affidavit.’ ” Commonwealth v. O’Day, 440 Mass. 296, 297 (2003), quoting Commonwealth v. Villella, 39 Mass.App.Ct. 426, 428 (1995).
The connection between the items seized and the place to be searched does not need to be based on direct observation. Commonwealth v. Donahue, 430 Mass. 710, 712 (2000). Rather, “in the absence of direct observation, [the court] look[s] to four factors from which a nexus between the place and items may be determined: (1) the type of crime, (2) the nature of the items sought, (3) the extent of the suspect’s opportunity to conceal the items at the location to be searched, and (4) reasonable inferences as to where a criminal would likely hide items of the sort sought.” Commonwealth v. Harmon, 63 Mass.App.Ct. 456, 461 (2005).
In Commonwealth v. Lathy, the police conducted two controlled buys of narcotics with the defendant. 69 Mass.App.Ct. 102, 104-05 (2007). In the first, they observed the defendant deliver drugs to a prearranged location and return to his residence. Id. at 104. In the second, they observed the defendant leave his residence, conduct the sale, and return to his residence. Id. 104-05. The Appeals Court held that the car used in both controlled buys was parked at the defendant’s residence both before and after the buys. Id. at 106-07. Therefore it was reasonable to conclude that the residence held concealed narcotics. Id. at 107. See also Commonwealth v. Hardy, 63 Mass.App.Ct. 210, 213-14 (2005) (magistrate could properly infer from facts and police observations that defendant stored drugs in his home). Commonwealth v. Alcantara, 53 Mass.App.Ct. 591, 593-94 (2002) (court concluded that it was reasonable to infer that the defendant kept drugs in his apartment as his method of operation was to deliver drugs to a specified location after receiving a telephone call).[1]
In the present case, the information in the affidavit provided probable cause to believe that the evidence of the controlled buys would be found at Legette’s residence, based on a nexus between the crime alleged and the place to be searched. A magistrate could reasonably infer from the controlled buys that Legette was involved in the crime of selling Oxycontin pills. Furthermore, based on observations that the red Acura used in all of the controlled buys was parked at Legette’s residence before and after the buys, it was reasonable to infer that the residence held narcotics. *587 Therefore, after reviewing the information provided in “the four corners of the affidavit,” this court concludes that the search of Legette’s residence was proper, as there was probable cause to believe evidence of the controlled buys would be found there. See Cinelli, 389 Mass. at 213.
B. Search of Legette’s Vehicle
Legette also argues that the affidavit in support of the search warrant failed to establish probable cause that narcotics or other contraband would be present in his vehicle. Even if the warrant to search his vehicle was improper or flawed, the search of his vehicle was valid as a search incident to arrest and/or inventory search.
Search Incident to Arrest
Warrantless searches are “per se unreasonable,” unless “subject to a few . . . specifically established and well-delineated exceptions.” Katz v. United States, 389 U.S. 247, 357 (1967). A search incident to a lawful arrest is one of these exceptions. Thorton v. United States, 541 U.S. 615, 617 (2004). “Once an officer determines that there is probable cause to make an arrest, it is reasonable to allow officers to ensure their safely and to preserve evidence by searching the entire passenger compartment.” Id at 622-23. The Supreme Court has recently held that the circumstances unique to the automobile context justify a search incident to arrest when it is reasonable to believe that evidence of that offense might be found in the vehicle. Arizona v. Gant, 129 S.Ct. 1710, 1714 (2009).
Here, in an attempt to properly execute a valid arrest warrant, Pilz pulled Legette over while he was driving his motor vehicle. Pilz was aware that an arrest warrant had been issued for Legette and he also had a description of Legette’s known vehicle. “If police know of an outstanding warrant for an individual, he or she may be stopped to execute the warrant.” Commonwealth v. Owens, 414 Mass. 595, 597 (1993). During this motor vehicle stop, Legette was notified of his outstanding warrant and placed under arrest and in the marked police vehicle. Pilz was instructed to bring Legette to the police department while Hardy stayed on scene to inspect the vehicle. The court finds that the search of Legette’s vehicle was lawful as a search incident to arrest, as supported by constitutional case law, Article 14 and G.L.c. 276, §1.
Inventory Search
Given the location of Legette’s arrest, the police were authorized to impound his vehicle and conduct an inventory search of its contents. Inventory searches are permitted under both the Fourth Amendment and Article 14. Commonwealth v. Ford, 394 Mass. 421, 424-25 (1985). The legitimacy of a constitutional inventory search involves two related inquiries: “(1) whether the impoundment of the vehicle leading to the search meets constitutional strictures, and (2) whether the conduct and scope of the search itself meets those strictures.” Commonwealth v. Ellerbe, 430 Mass. 769, 773 (2000).
A lawful inventory search is first based on the propriety of the impoundment of the vehicle. Commonwealth v. Brinson, 440 Mass. 609, 612 (2003). Impoundment is justified if supported by public safety concerns. Commonwealth v. Daley, 423 Mass. 747, 750 (1996). Removal of a vehicle from a public highway and conducting an inventory search of the vehicle is also constitutional when there is no practical alternative available. Commonwealth v. Muckle, 61 Mass.App.Ct. 678, 682 (2004).
In this case, the arrest of the defendant resulted in a vehicle being present on a busy highway without an authorized, licensed driver who could lawfully remove it. The police were required to direct traffic based on the location of the vehicle. Thus, given the public safety concerns based on the vehicle’s location, the police lawfully impounded the vehicle.
The scope of a permissible inventory search is guided by the interests justifying the search as set forth in written procedures of the police department authorizing the search. Commonwealth v. Garcia, 409 Mass. 675, 682 (1991). If the written inventory policy permits police to search any closed, but unlocked containers, the police may do so. Commonwealth v. Caceres, 413 Mass. 749, 755 (1992).
Here, the police conducted the search pursuant to Methuen Police policy and procedures. The policy and procedures for motor vehicle inventory searches permit the police to search any open or closed, but unlocked containers. Therefore, the conduct and scope of the inventory search met constitutional strictures. Daley, 423 Mass. at 750.
CONCLUSION
Thus, based on the analysis of the facts discussed above, there was probable cause to search Legette’s residence, as there was sufficient information to link his criminal activity with his residence. Additionally, an arrest warrant was properly issued for Legette. Thus, the search of Legette’s vehicle was constitutional as a search incident to his arrest and/or as an inventory search given the circumstances of the stop. As a consequence, the defendant’s Motion to Suppress Evidence is denied.
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendant’s Motion to Suppress evidence is denied.

The defendant relies heavily on Commonwealth v. Smith in his argument. 57 Mass.App.Ct. 907 (2003). However, the facts in this case are distinguishable from those in Smith. In Smith, the court held that witnessing the defendant on one occasion drive directly from his residence to a drug transaction does not, by Itself, establish probable cause to search his residence. Id. at 908. However, in this case, the police observed Legette on more than one occasion. The observations of the police are sufficient to establish a nexus between Legette’s drug-selling activities and his residence.