The Commonwealth appeals from an order granting the defendant suppression of items seized from his residence. The Commonwealth contends that the judge erred in concluding that the search warrant affidavit did not establish a sufficient nexus between the defendant's drug dealing and his residence. We agree and reverse.
Background. The following is taken from the affidavit, which was authored by a police officer with over ten years of police experience and who at that time was a narcotics detective with the Drug Enforcement Administration. In December, 2013, a confidential informant (CI) told police that the CI had purchased oxycodone from the defendant and that the defendant had a practice of selling drugs from his car while stationed in busy parking lots.
Between January and February, 2014, the police set up surveillance of the defendant. During that time, police observed the defendant engage in approximately eighteen suspected drug transactions. These suspicious meetings took place mostly in parking lots and in other public places. He traveled to each of these encounters by car. In approximately eight of these suspected drugs transactions, the defendant left his residence, got into his car, and drove directly to the meeting place. After approximately three of these suspected drug transactions, the defendant left the meeting place and drove directly to his residence. The last of these suspected drug transactions took place on February 12, 2014.
On that day, the police observed the defendant leave his home and meet with a man later identified as Gilbert Pacheco. Police apprehended Pacheco immediately after his encounter with the defendant and Pacheco admitted to purchasing Percocet from the defendant. Later that day, police applied for and obtained warrants to search the defendant's car and home, as well as his person. Evidence of the defendant's drug dealing was seized from both places, however, only the items seized from the residence are at issue in this appeal.[2]
Discussion. "[O]ur inquiry as to the sufficiency of the search warrant application always begins and ends with the 'four corners of the affidavit.' " Commonwealth v. O'Day, 440 Mass. 296, 297 (2003), quoting from Commonwealth v. Villella, 39 Mass. App. Ct. 426, 428 (1995). "The central inquiry is whether the affidavit accompanying the search warrant sets forth probable cause to believe that the drugs or related evidence from the drug delivery service are likely to be found at the defendant['s] residence." Commonwealth v. Luthy, 69 Mass. App. Ct. 102, 105 (2007). To do so, the affidavit must establish probable cause of "a sufficient nexus between the defendant's drug-selling activity and his residence." O'Day, supra at 304. See Commonwealth v. Dillon, 79 Mass. App. Ct. 290, 294-295 (2011). "Probable cause exists where the facts and circumstances within [the officers'] knowledge and of which they had reasonable trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." Commonwealth v. Rousseau, 465 Mass. 372, 384-385 (2013) (quotation omitted).
a. Defendant's drug-dealing activity. Here, the affidavit established probable cause to believe that the defendant was dealing in a controlled substance. A CI, who had given information in the past that lead to the seizure of drugs, told police that he had purchased oxycodone from the defendant. The CI indicated that the defendant sold drugs from out of his car at various parking lots. Police then observed the defendant engage in approximately eighteen suspected drug transactions. Although the police did not witness the exchange of money for drugs on any of these occasions, probable cause nevertheless existed to believe that these encounters involved the sale of narcotics. The encounters were brief, involved different individuals, and took place in various public locations. The affiant attested that, based upon his training and experience, these brief and surreptitious street encounters were consistent with drug transactions. See Commonwealth v. Hardy, 63 Mass. App. Ct. 210, 212-213 (2005) (court credited officer's conclusion, based on his experience, that activity in which defendant drove from his residence to other location to meet others briefly was "common in the illegal distribution of controlled substances"). Police also intercepted the last of the purchasers, who admitted to having purchased Percocet from the defendant. Viewing the facts in their totality, the police could fairly infer that the transactions likely involved the defendant's sale of narcotics. See Commonwealth v. Escalera, 462 Mass. 636, 645-646 (2012) (where police observed defendant meet others and behave in same way he did during controlled buys, they reasonably could infer that defendant engaged in drug transactions); Hardy, supra.
b. Search of defendant's home. Police can establish probable cause of a nexus between a suspected drug dealer's operation and his residence with evidence that the suspected dealer repeatedly left his residence to attend a suspected drug transaction or repeatedly returned to his residence after engaging in a suspected drug transaction. See Escalera, supra (nexus to residence established where police observed defendant drive from his apartment directly to drug transaction on three occasions); Commonwealth v. Gallagher, 68 Mass. App. Ct. 56, 59-60 (2007) (nexus to residence established where police observed defendant drive two times from her apartment to location of controlled buys, and on one of those occasions drive directly back to her apartment after controlled buy).
Here, there was evidence of the defendant both leaving his residence to attend suspected drug transactions and returning to his residence after engaging in suspected drug transactions.[3] This evidence amounted to approximately eight departures from the defendant's residence and approximately three returns. The combination of these trips to and from the defendant's residence establish a sufficient nexus between the defendant's drug dealing and the storage of the drugs in his residence.
Finally, contrary to any assertion by the defendant that any drugs could have been stored in his vehicle as opposed to his residence, "[t]hat evidence of the defendant's drug sales might also have been found in the defendant's vehicle does not detract from the conclusion that there was probable cause to search [his residence]." Escalera, supra at 646.
Order allowing motion to suppress reversed.

The judge allowed suppression only of the evidence recovered from the search of the defendant's residence.

As noted above, the police did not observe the exchange of money for drugs. Nor did any of the transactions involve an undercover buy. Nevertheless, as discussed earlier, the many observations the police made through their trained eyes, the information the CI provided, and Pacheco's admission to buying drugs from the defendant together gave rise to probable cause to believe that these street transactions involved the defendant's sale of narcotics.