On January 11, 2016, law enforcement officers seized drugs and other evidence[2] during the execution of a search warrant at 229 Stafford Road, second floor, in Fall River. On January 21, 2016, the defendant, Aaron Mello, was indicted on charges of unlawful possession of heroin with intent to distribute, subsequent offense, and unlawful possession of methadone with intent to distribute, subsequent offense. The defendant filed a motion to suppress the evidence, claiming, among other things, that "[t]he affidavit in support of the search warrant fails to provide sufficient nexus between drug selling activity and the defendant's residence to establish probable cause to search the residence." The motion judge held a nonevidentiary hearing in the Superior Court, and subsequently issued a memorandum of decision and order allowing the motion to suppress on the basis that "the affidavit fails to provide a sufficient nexus of narcotics-related activity to the defendant's apartment."[3] A single justice of the Supreme Judicial Court allowed the Commonwealth's application for leave to file this interlocutory appeal pursuant to Mass.R.Crim.P. 15(a)(2), as appearing in 422 Mass. 1501 (1996). For the reasons delineated infra, we reverse.
Legal standards. Our analysis of the sufficiency of a search warrant application begins and ends with the "four corners of the affidavit." Commonwealth v. O'Day, 440 Mass. 296, 297 (2003) (citation omitted). In this regard, "we determine whether, based on the affidavit in its entirety, the magistrate had a substantial basis to conclude that a crime had been committed, ... and that the items described in the warrant were related to the criminal activity and probably in the place to be searched." Id. at 298. See Commonwealth v. Donahue, 430 Mass. 710, 712 (2000) (in reviewing nexus, appellate court determines whether affidavit supporting search warrant application "provide[s] a substantial basis for concluding that evidence connected to the crime will be found on the specified premises"). In conducting this analysis, we recognize that because "special protections are extended to a person's home under both the Federal and State Constitutions," a magistrate may not "reasonably infer that drugs are being stored in a home based solely on the fact 'that the defendant lives there.' " Commonwealth v. Escalera, 462 Mass. 636, 643 (2012), quoting from Commonwealth v. Pina, 453 Mass. 438, 441 (2009). Rather, the police must provide "particularized information" that " 'would permit a reasonable inference that the defendant likely kept a supply of drugs' in the home."Ibid. (citation omitted). Insofar as every case presents unique facts and circumstances, "[n]o bright-line rule can establish whether there is a nexus between suspected drug dealing and a defendant's home. Police may rely on a variety of investigatory sources in making the necessary showing, including police surveillance and statements from credible informants." Ibid. Finally, affidavits for search warrants should be interpreted "in a commonsense and realistic fashion," and "read as a whole, not parsed, severed, and subjected to hypercritical analysis." Donahue, supra (citations omitted).
Discussion. In the present case, the motion judge determined that the affidavit failed to establish a sufficient nexus between the drug dealing activity and the defendant's apartment because there is "no indication that [the informant] purchased anything from [the defendant] from inside [the] apartment," and "[t]he information provided by the [informant] establishes that the defendant sells heroin, but it fails to provide that the defendant actually stores heroin at 229 Stafford Rd., Apt. 2." We disagree.
The affidavit delineated information from a confidential informant, which Detective Luis Duarte had obtained "[w]ithin the last 72 hours."[4] The information included the following: (1) the defendant, who goes by the street name "Slim," lives at 229 Stafford Road, second floor; (2) the defendant "regularly sells heroin from out of his address at 229 Stafford Rd."; (3) the defendant "would sell heroin either from his apartment or meet parties out on the street"; (4) the informant had purchased heroin from the defendant "on several separate occasions in the recent past"; (5) whenever the informant "would purchase heroin from [the defendant], [the informant] would either meet [the defendant] at his address or a prearranged location"; and (6) the informant carried out a controlled buy in which he entered the defendant's apartment building and "was met by [the defendant] outside of the 2nd floor apartment," at which time the defendant sold him the agreed upon amount of heroin.[5]
The particularized information delineated above was more than sufficient to permit a reasonable inference that the defendant likely kept a supply of drugs in the home. See Escalera, 462 Mass. at 644 ("A single observation of a suspect leaving his home for a drug deal may also support an inference that drugs will be found in the home where it is coupled with other information, such as statements from credible informants"). See also Cypher, Criminal Practice and Procedure § 5.70 (4th ed. 2014). Not only did the informant state that the defendant "regularly sells heroin from out of his address," but the informant also indicated that he had purchased heroin from the defendant on multiple occasions in the recent past, and that to effectuate these purchases, the informant would meet the defendant at either his address or a prearranged location. Combined with the informant's subsequent controlled buy, wherein he met the defendant outside of the second-floor apartment at which time the defendant "sold [the informant] the agreed upon amount of heroin," it was reasonable to infer that drugs were likely kept in the defendant's apartment. Precedent supports our determination. See Commonwealth v. Young, 77 Mass. App. Ct. 381, 385-388 (2010) (affidavit in support of search warrant, which described police observation of defendant's routine of walking directly from his apartment to point of drug sale and returning to his apartment immediately thereafter, furnished sufficient nexus between defendant's drug sales and his apartment to justify search of his residence).[6] Contrast Commonwealth v. Medina, 453 Mass. 1011, 1011 (2009) (affidavit establishing only that defendant drove from his apartment to drug sale and thereafter returned directly to his apartment "lacks the requisite nexus"). To hold otherwise would require a hypertechnical analysis and a parsing of the affidavit, which we are compelled to reject. See Donahue, 430 Mass. at 712. See also Commonwealth v. Perez, 90 Mass. App. Ct. 548, 551 (2016), quoting from Brinegar v. United States, 338 U.S. 160, 175 (1949) ("In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent [people], not legal technicians, act").[7]
Order allowing motion to suppress reversed.

The search warrant return reflects the seizure of, among other items, $4,829 in cash, 500 glassine bags of heroin, and 113 methadone pills.

The defendant also argued in his motion to suppress that the search warrant affidavit failed to state grounds establishing the informant's basis of knowledge and veracity. See Commonwealth v. Upton, 394 Mass. 363, 374-375 (1985). The motion judge disagreed. In view of the informant's prior purchases of narcotics from the defendant at the apartment and prearranged locations, along with the controlled buy from the defendant discussed infra, we agree that the affidavit satisfied both prongs of the Aguilar-Spinelli test. See generally Aguilar v. Texas, 378 U.S. 108 (1964) ; Spinelli v. United States, 393 U.S. 410 (1969). The defendant does not argue to the contrary in his brief.

The affidavit also described the experience and training of Detective Duarte, who had conducted and been part of numerous drug arrests, and who had been a police officer for more than eight years.

After making the controlled buy, the informant brought the heroin back to Detective Duarte's vehicle. The heroin was logged as evidence at the police station.

We are unpersuaded by the defendant's attempt to distinguish Young from the present case. Here, the nexus to the apartment is stronger than that in Young in view of (1) the informant's statement that the defendant "regularly sells heroin from out of his address," and (2) the controlled buy where the informant met the defendant "outside of the 2nd floor apartment" at which time the defendant sold him the drugs. There was no such direct indication in Young that the defendant sold drugs out of or at the threshold of his residence. See Young, supra at 386-387.

The defendant also moved to suppress the fruits of the search and seizure on the basis that the police violated the "Knock and Announce requirement of the search warrant." He contends that if this panel reverses the order on the issue of nexus, he is entitled to an evidentiary hearing. The Commonwealth agreed at oral argument that the defendant would be entitled to such a hearing. Accordingly, the defendant may seek this hearing.